UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
:
UNITED STATES OF AMERICA                :
:
:
  - against -                           : No. 12-cr-618-JFK
:
: ECF Case
FNU LNU, a/k/a "Anthony Ray Hardy,"     :
:
  Defendant.                            :
:
:
:
-----------------------------------------------------------------x


SENTENCING MEMORANDUM


Dated: New York, New York            Andrew J. Ceresney
       March 20, 2013                John Nichols
                                     Debevoise & Plimpton LLP
                                     919 Third Avenue
                                     New York, NY 10022
                                     (212) 909-6000

                                     *Counsel for Defendant*

DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel 212 909 6000
Fax 212 909 6836
www.debevoise.com

March 20, 2013


BY ECF

The Honorable John F. Keenan
United States District Court Judge
United States District Court
    Southern District of New York
500 Pearl Street
New York, New York 10007

>	U.S. v. FNU LNU, a/k/a "Anthony Ray Hardy,"
>	No. 12-cr-618-JFK

Dear Judge Keenan:

      We write on behalf of the defendant, who is scheduled to appear in front of Your Honor on March 25, 2013, at 2:30 p.m., for sentencing. On December 18, 2012, pursuant to a plea agreement with the Government, the defendant pled guilty before Your Honor to one count each of making a false statement in a passport application, 18 U.S.C. § 1542, and aggravated identity theft, 18 U.S.C. § 1028A. The identity theft count carries a mandatory minimum sentence of two years, to be imposed consecutive to the sentence for the false statement count. The false statement count has no mandatory minimum term. The defendant admitted applying for a passport using the identity of Anthony Ray Hardy, which was not his real name; according to the Government's discovery, the true Mr. Hardy is an inmate in a Texas prison who has been incarcerated for the past 20 years, save for six months in 2008.

      The Probation Office's Presentence Investigation Report (the "PSR") provides a Guidelines range of 36 to 42 months. PSR ¶ 133. Further, Probation recommends an above-Guidelines sentence of 48 months. PSR at 31. As set forth below, we strongly oppose Probation's recommended term and respectfully seek the statutory minimum.

I.  The Section 3553(a) Factors and Guidelines Policy Counsel in Favor of the Minimum Sentence Available

As Your Honor is aware, the Guidelines are no longer binding on the courts. See United States v. Booker, 543 U.S. 220, 245-46 (2005). Rather, district courts are now under a "duty to consider" not only the Guidelines but also "the other factors set forth in 18 U.S.C. § 3553(a)." United States v. Rattoballi, 452 F.3d 127, 132 (2d Cir. 2006). The overriding mandate of § 3553(a) is that courts must impose a sentence that is "sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in § 3553(a)(2): retribution, deterrence, incapacitation, and rehabilitation. See 18 U.S.C. § 3553(a)(2). To determine whether a sentence meets this standard, a sentencing court must consider the Guidelines alongside other sentencing factors enumerated in § 3553(a). See United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005). Accordingly, courts must consider, *inter alia*: (A) the nature and circumstances of the offense and (B) the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

We respectfully request that Your Honor sentence the defendant to the statutory minimum of 24 months. The reasons for a minimum sentence are detailed below and include the unique facts of the offense and limited harm, our client's family responsibilities and the staleness and non-violent character of his prior convictions.

A.  The Nature and Circumstances of the Offense

A minimum sentence is appropriate on the facts of this case, where the defendant is being sentenced for submitting a passport application using a false identity. PSR ¶ 9. The defendant's crime, though serious, lacks the kinds of aggravating facts that might justify a stiffer sentence: there are no allegations of trading in false papers, nor of a broader identity theft conspiracy. See generally U.S.S.G. § 2L2.2 (providing for enhancements on facts not present here). Indeed, the defendant did not even receive a passport as a result of his application.

A minimum sentence also adequately reflects the relatively minor harm to the victim. The victim has identified no financial loss. PSR ¶ 22. Rather, the PSR recites that the victim has on an unspecified number of occasions been detained by police until he could establish his identity through fingerprinting. PSR ¶ 22. The PSR claims this cost the victim a "great deal of 'suffering and time consumed.'" PSR ¶ 22. But it is difficult to square the claimed "great deal" of suffering with the fact that the victim has been incarcerated for all but six months of the past two decades. Regardless, the non-pecuniary harm is minor and does not justify any enhanced sentence.

Moreover, the defendant's other uses of the Hardy identity over the years do not demand additional punishment, as Probation recommends. See PSR at 32. The defendant has been charged only with applying for a false passport and not with any other crime. Many identity theft cases involve long-running use of an identity. There are no unique aggravating circumstances here. Further, in this case, the harm is discrete and minor because the victim has been incarcerated for so many years. That supports a minimum sentence, not enhanced punishment.

B.  Personal History and Characteristics

A minimum sentence is also appropriate in light of the defendant's present family responsibilities and relatively limited criminal history.

1.  The Defendant Is an Integral Part of the Lives of His Young Children and their Mother

The defendant has significant family ties counseling in favor of a minimum sentence. The defendant has two young children with Dakisha Brown. PSR ¶ 110. The defendant and Ms. Brown live together in Far Rockaway, Queens with their children and Ms. Brown's other children. PSR ¶ 110. Ms. Brown is unemployed and receives public assistance. PSR ¶ 111. Also, we understand that the family was placed under additional strain when they were temporarily displaced due to Hurricane Sandy. The defendant is accordingly an important source of support for Ms. Brown and the children. He has worked at various jobs despite a physical handicap. PSR ¶¶ 117, 127-28. More recently, he has received disability checks and other support. PSR ¶ 127. A minimum sentence is appropriate to allow the defendant to be reunited with his family sooner and to resume supporting them.

2.  The Defendant's Criminal History Is Consistent with a Minimum Sentence

Further, the defendant's criminal history is consistent with a minimum sentence, despite the large number of convictions. The defendant has clearly made mistakes in his life. But his criminal history is non-violent. It is also noticeably stale – his most recent serious conviction dates to 1999. The vast majority of his convictions concern relatively minor drug possessions or sales, which is sadly consistent with the defendant's life-long marijuana use. See PSR ¶ 123. As Your Honor remarked at the plea hearing in reviewing the stipulated criminal history: "The government tells me that you have 14 different convictions for various things, most of them are very minor but, nevertheless, you do have these 14 convictions." Tr., dated Dec. 18, 2012, at 15 (enclosed). Such minor convictions warrant only a minimum sentence.

For similar reasons, this Court should reject Probation's suggestion that the defendant's criminal history demands extra punishment. PSR at 32; see also PSR ¶ 149. Contrary to Probation's argument, the defendant's numerous but minor drug convictions do not constitute the kind of egregious, serious record that demands exceptional punishment. This is reinforced by the Guidelines, which make plain that such upward departures are reserved for defendants whose records are far more troubling than our client's. U.S.S.G. § 4A1.3 cmt. 2(B) (providing for upward departure in category VI cases only for "an egregious, serious criminal record" such as "five prior sentences for very large-scale fraud offenses"). In the event the Court imposes a sentence pursuant to the Guidelines, and it should not for all the reasons set out above, a minimum term under category VI is more than sufficient here.[1]

II.	The Defendant Is Unable to Pay any Fine

Finally, the defendant lacks the ability to pay any fine. U.S.S.G. § 5E1.2. Whether to impose a fine is within the discretion of the district court. Rattoballi, 452 F.3d at 139. In determining whether to impose a fine, the Court must engage in an analysis similar to that employed in determining the appropriate term of imprisonment, as well as considering the standards outlined in 18 U.S.C. §§ 3571 and 3572. Id. According to the PSR, the defendant has no assets or other financial resources. PSR ¶ 129. This is consistent with the fact that the defendant has appointed counsel in this matter, a factor that further counsels against imposing a fine. See U.S.S.G. § 5E1.2 cmt. 3. Accordingly, the Court should follow Probation's recommendation on this point (PSR at 34) and not impose a fine that the defendant cannot pay.

---

[1]	It bears noting that the plea agreement provides a lower Guidelines range of 30 to 42 months, based on the Government's stipulation that the defendant has a criminal history category of IV. Plea Agreement at 5. We do not dispute Probation's category VI calculation, nor do we believe that the Government's prior calculation is binding. But the Government's willingness to enter into an agreement providing for a lower possible sentence supports our argument for imposing a lower term, consistent with the statutory factors and Guidelines policy.

*	*	*

The defendant regrets his crime.  He also regrets the pain he has caused Ms. Brown and the children, and he looks forward to reuniting with them after he serves his sentence.  The defendant respectfully asks for a statutory minimum sentence of 24 months.

Please let us know if you would like any additional information in advance of sentencing.

Respectfully submitted,

s/ Andrew J. Ceresney

Andrew J. Ceresney
John Nichols

Enclosure

cc:	AUSA Edward Diskant (by ECF and e-mail)

```
          CCi5harP                    plea
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2
 3    UNITED STATES OF AMERICA,
 3
 4              v.                                12 Cr. 618 (JFK)
 4
 5    FNU LNU, a/k/a "Anthony Ray
 5    Hardy,"
 6
 6                    Defendant.
 7
 7    ------------------------------x
 8
 8
 9                                                December 18, 2012
 9                                                10:54 a.m.
10
10
11    Before:
11
12                         HON. JOHN F. KEENAN,
12
13                                                District Judge
13
14
14                              APPEARANCES
15
15    PREET BHARARA
16         United States Attorney for the
16         Southern District of New York
17    BY:  EDWARD B. DISKANT
17         Assistant United States Attorney
18
18    DEBEVOISE & PLIMPTON, LLP
19         Attorneys for Defendant
19    BY:  ANDREW CERESNEY
20         JOHN NICHOLS
20
21
22
23
24
25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
          CCi5harP                    plea
 1              (Case called)
 2              THE COURT:  All right.  This is in the matter of the
 3    United States against -- does the indictment still read FNU
 4    LNU?
 5              MR. DISKANT:  It does, your Honor.
 6              THE COURT:  A/k/a Anthony Ray Hardy?
 7              MR. DISKANT:  It does, your Honor.
 8              THE COURT:  I want to make sure I understand what is
 9    happening.  Am I taking a plea from somebody that the
10    government doesn't know what their name is?
11              MR. DISKANT:  That's correct, your Honor.
12              THE COURT:  That's all right with the government?
```

```
                          CCi5harP.txt
13            MR. DISKANT:  It is certainly okay with the
14   government, yes.
15            THE COURT:  Okay.  Swear the defendant.
16            MR. CERESNEY:  If we can have a moment, your Honor?
17   He is just signing the plea agreement.
18            THE COURT:  Sure.  What is it, the plea agreement?
19            MR. CERESNEY:  Yes.
20            THE COURT:  Take your time.  Sure.
21            (Pause)
22            THE COURT:  Mr. Ceresney, how long were you an
23   assistant?
24            MR. CERESNEY:  Five years, your Honor.
25            THE COURT:  Was there ever a case where you didn't
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    3
     CCi5harP                    plea
 1   know the defendant's name?
 2            MR. CERESNEY:  Never, your Honor.
 3            THE COURT:  All right.
 4            MR. CERESNEY:  But I was only in general crimes for
 5   about a year.
 6            THE COURT:  You were only in general crimes for a
 7   year.
 8            MR. CERESNEY:  In securities cases you usually know
 9   the defendant's name.
10            THE COURT:  Do we have a written allocution here, by
11   the way?
12            MR. CERESNEY:  We do.
13            THE COURT:  All right.
14            (Defendant sworn)
15            THE COURT:  Now, would you stay standing, please, sir?
16            The first question I always ask everybody I'm going to
17   ask you.  Before you answer the question I want you to remember
18   that you are under oath.  Now, what that means is this:  That
19   if you make an intentional false statement, in other words if
20   you lie under oath, you can be prosecuted by the government
21   additionally for perjury and/or making a false statement.  Now,
22   that's important because you have to tell me the truth.  So, my
23   first question of you is what is your name?
24            THE DEFENDANT:  Anthony Hardy.
25            THE COURT:  What?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    4
     CCi5harP                    plea
 1            THE DEFENDANT:  Anthony Hardy.
 2            THE COURT:  Anthony Hardy.  All right.
 3            How old are you, Mr. Hardy?
 4            THE DEFENDANT:  54.
 5            THE COURT:  I'm going to let him come up to the front
 6   table because he speaks very low and the court reporter had to
 7   move all the way up.
 8            MR. CERESNEY:  We can try with the microphone.
 9            THE COURT:  All right.  Then sit down, Mr. Hardy, and
10   talk into the microphone.
11            How old are you then?
12            THE DEFENDANT:  54.
13            THE COURT:  Do you read, write, speak and understand
14   English?
15            THE DEFENDANT:  Yes.
16            THE COURT:  And do you waive the reading of the
17   indictment or do you require us to read it to you?
                                Page 2
```

```
                              CCi5harP.txt
18            THE DEFENDANT:  Yes.  I will waive it.
19            THE COURT:  You waive it.  All right.
20            How far did you go in school?
21            THE DEFENDANT:  Well, I was in fifth, sixth grade.
22            THE COURT:  Fifth or sixth grade.  All right.
23            When you were arrested were you living any one place?
24            THE DEFENDANT:  Yes.
25            THE COURT:  Where?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    5
     CCi5harP                    plea
 1            THE DEFENDANT:  In Queens.
 2            THE COURT:  Queens.
 3            Are you married or single?
 4            THE DEFENDANT:  I'm separated.
 5            THE COURT:  You're separated?
 6            THE DEFENDANT:  No.  That's my baby mom.
 7            THE COURT:  You're what?
 8            THE DEFENDANT:  My baby mother.
 9            (Defendant and counsel conferring)
10            THE DEFENDANT:  Oh, I live with the mother of my
11   children.
12            THE COURT:  How many children do you have?
13            THE DEFENDANT:  Two.
14            THE COURT:  How old are they?
15            THE DEFENDANT:  6 and 3 years old.
16            THE COURT:  When you work, if you do work, what do you
17   do?
18            THE DEFENDANT:  As a chef, cook in a kitchen.
19            THE COURT:  Have you ever been under the care of a
20   doctor or psychiatrist for mental or emotional problems?
21            THE DEFENDANT:  No.
22            THE COURT:  Have you ever been hospitalized?  You have
23   an awful lot of convictions for marijuana possessions but have
24   you ever been hospitalized for alcoholism or narcotic addiction
25   or any other kind of drug abuse?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    6
     CCi5harP                    plea
 1            THE DEFENDANT:  I was in the drugs program.
 2            THE COURT:  When was that?
 3            THE DEFENDANT:  I can't recall the year, sir.
 4            THE COURT:  Was it within the last five years?
 5            THE DEFENDANT:  Yeah; five, six years.
 6            THE COURT:  How are you feeling today?
 7            THE DEFENDANT:  Feeling all right.
 8            THE COURT:  Are you under the influence of anything
 9   such as alcohol or drugs today that might influence your
10   ability to understand what is going on?
11            THE DEFENDANT:  No.
12            THE COURT:  Did you receive a copy of the indictment
13   and did you go over it with Mr. Ceresney and Mr. Nichols?
14            THE DEFENDANT:  Yes.
15            THE COURT:  Did they explain to you the charges in the
16   indictment and do you feel you understand them?
17            THE DEFENDANT:  Yes.
18            THE COURT:  Did you tell your lawyers everything you
19   know about the case?
20            THE DEFENDANT:  Yes.
21            THE COURT:  Did you hold anything back from them?
22            THE DEFENDANT:  No.
                                Page 3
```

```
23            THE COURT:  Now, you have the right to continue to
24   plead not guilty, to persist in that plea and to go to trial.
25   Do you understand that?
                   SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```
                                                                        7
```
     CCi5harP                      plea
 1             You have the right to a trial.  Do you understand
 2   that?
 3            THE DEFENDANT:  Yes.
 4            THE COURT:  And if you were to continue to plead not
 5   guilty, you have the right to a speedy and a public trial in
 6   front of a jury of 12 people.
 7            Do you understand that?
 8            THE DEFENDANT:  Yes.
 9            THE COURT:  And you have the right to be represented
10   by a lawyer at trial and at every other stage of the
11   proceedings.
12            THE DEFENDANT:  Yes.
13            THE COURT:  If you can't afford a lawyer, another
14   lawyer -- I don't think you can -- I would appoint another
15   lawyer to represent you free of charge if Mr. Ceresney and
16   Mr. Nichols were not continuing to represent you.
17            Do you understand that?
18            THE DEFENDANT:  Yes.
19            THE COURT:  All right.
20            Now, if I accept your guilty plea there is no further
21   trial of any kind.  Do you understand that?
22            THE DEFENDANT:  Yes.
23            THE COURT:  If you were to continue to plead not
24   guilty and if you went to trial, at a trial you would be
25   presumed to be innocent unless and until the government proved
                   SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```
                                                                        8
```
     CCi5harP                      plea
 1   that you were guilty beyond a reasonable doubt to the
 2   satisfaction of all 12 jurors.
 3            Do you understand that?
 4            THE DEFENDANT:  Yes.
 5            THE COURT:  At a trial you would have the right to
 6   cross-examine and confront any and all witnesses that the
 7   government called against you.
 8            Do you understand that?
 9            THE DEFENDANT:  Yes.
10            THE COURT:  At a trial you would have the right to
11   remain silent and no inference could be drawn against you
12   because of your silence.  On the other hand, if you wanted to,
13   you could take the witness stand and testify in your own
14   defense.
15            Do you understand that?
16            THE DEFENDANT:  Yes.
17            THE COURT:  If you wanted it and if Mr. Ceresney and
18   Mr. Nichols requested it and if the government agreed and if I
19   agreed, you could be tried by me without a jury, they call that
20   a bench trial or a non-jury trial.  If you had a non-jury trial
21   the burden would still be on the government -- that means the
22   gentleman at the front table, Mr. Diskant -- the burden would
23   be on him and the government to prove that you were guilty
24   beyond a reasonable doubt.
25            Do you understand that?
                   SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

```
       CCi5harP                plea
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  And you would also still have in a
 3     non-jury trial the same constitutional rights that I set forth
 4     for you.  Do you understand that?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  At trial you would have the right to
 7     subpoena witnesses and evidence in your own defense.  Do you
 8     understand that?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  Now, if I accept your offer to plead
11     guilty here there will be no further trial of any kind and you
12     are giving up all these rights with respect to the charges
13     against you in the indictment, there will be no further trial
14     of any kind, and I can sentence you just as if the jury had
15     brought in a verdict of guilty against you.
16              Do you understand that?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Now, you signed an agreement here, I can
19     read your signature, I assume it is Mr. Ceresney who scribbled
20     something here -- you should have been a doctor,
21     Mr. Ceresney -- but, in any event, you signed this and I can
22     read your name nice and clearly and when I say this I'm talking
23     about the eight-page letter that I'm holding up in my hand.
24              Was this explained to you before you signed it?
25              THE DEFENDANT:  Yes.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
       CCi5harP                plea
 1              THE COURT:  Do you feel you understand it?
 2              THE DEFENDANT:  Yes.
 3              THE COURT:  Do you have any questions about it?
 4              (Defendant and counsel conferring)
 5              THE DEFENDANT:  No.
 6              THE COURT:  The agreement is fine with me as to its
 7     form.  I am returning it to the government for the safe
 8     keeping -- the original that is -- but you understand that
 9     that's an agreement between you on one side an the government
10     on the other side.  I'm not a party to the agreement.
11              Do you understand that?
12              THE DEFENDANT:  Yes.
13              THE COURT:  That means it is not binding on me.
14              Do you understand that?
15              THE DEFENDANT:  Yes.
16              THE COURT:  You do understand that?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Now I'm going to go over some of the
19     highlights of the agreement with you.  Even though it's been
20     explained to you I want you to make sure that you understand
21     these things.
22              You're pleading guilty to two counts, two different
23     charges.  You understand that, right?
24              THE DEFENDANT:  Yes.
25              THE COURT:  Now, Count One carries a maximum
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
       CCi5harP                plea
 1     punishment of up to 10 years in prison.
 2              Do you understand that?
 3              (Defendant and counsel conferring)
```

```
                       CCi5harP.txt
 4             THE DEFENDANT:  Yes.
 5             THE COURT:  Count Two carries a mandatory term of
 6   imprisonment, in other words I have to -- we are in the third
 7   paragraph of the first page of the letter, Count Two carries a
 8   mandatory term of imprisonment of two years, it has to run
 9   consecutively, that means to whatever sentence I impose on
10   Count One.
11             Do you understand that?
12             THE DEFENDANT:  Yes.
13             THE COURT:  That means your exposure here is 12 years.
14             Do you understand that?
15             THE DEFENDANT:  Yes.
16             THE COURT:  And on both Count One and Count Two there
17   is a period of supervised release that's fixed by statute;
18   Count One is three years, Count Two is one year.
19             Do you understand that?
20             THE DEFENDANT:  Yes.
21             THE COURT:  Now, if I sentence you to supervised
22   release, when you get out of prison I'm going to run those
23   concurrently, I will tell you that, so in other words you face
24   a maximum of three years' supervised release.
25             Do you understand that?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```
                                                                   12
```
     CCi5harP                         plea
 1             THE DEFENDANT:  Yes.
 2             THE COURT:  Now what that means is this:  You have to
 3   behave yourself when you get out.  If you violate any of the
 4   rules or regulations of the probation department I can have you
 5   brought back before me and sentence you to the whole period of
 6   supervised release as though it hasn't even started yet.
 7             Do you understand that?
 8             THE DEFENDANT:  Yes.
 9             THE COURT:  Each count, One and Two, carries the same
10   possible fine if you can afford it.  It is an enormous fine
11   from your point of view, the fine on Count One is a quarter of
12   a million dollars or whatever you made financially or whatever
13   anybody lost financially because of your criminal activity and
14   it is the same on Count Two.  In other words, the total fine,
15   if you can afford it statutorily, is all the way up to more
16   than half a million dollars.
17             Do you understand that?
18             THE DEFENDANT:  Yes.
19             THE COURT:  I'm going to tell you what I just said,
20   I'm going to repeat it.  If you can't afford it and I don't
21   think you can, I'm not going to fine you because I can't fine
22   somebody that can't afford it.  But, there is another monetary
23   penalty here and that other monetary penalty is that you face a
24   period when you get out -- not only when you get out but when
25   you are sentenced you face what we call an assessment, a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```
                                                                   13
```
     CCi5harP                         plea
 1   special assessment of $100 on each count so you face a $200
 2   special assessment.
 3             Do you understand that?
 4             THE DEFENDANT:  Yes.
 5             THE COURT:  I don't have a choice about that one, in
 6   other words I have to affix that.
 7             Do you realize that?
 8             THE DEFENDANT:  Yes.
                               Page 6
```

```
                           CCi5harP.txt
 9              THE COURT:  All right.
10              Now, in the United States we have what are called the
11   Sentencing Guidelines, and the Sentencing Guidelines are
12   something I have to consider when I sentence you.  I don't have
13   to follow them but I have to consider them.
14              Now, under the guidelines which aren't binding on me
15   your sentence range is from six to 12 months on Count One and,
16   as I told you, it is two years on Count Two, so therefore your
17   total guideline range, in other words the range if I follow the
18   guidelines would be 30 to 42 months in jail, that's two and a
19   half years to three years and six months.
20              Do you understand that?
21              THE DEFENDANT:  Yes.
22              THE COURT:  Now, I don't have to follow those
23   guidelines, I can be more strict or I can be more lenient but I
24   have to consider them.
25              Do you understand that?
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                   14
     CCi5harP                  plea
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  You have agreed here in this agreement
 3   that if I sentence you within the guideline range or lower you
 4   are not going to appeal.
 5              Do you understand that?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  That you are also not going to bring any
 8   of other applications.
 9              Do you understand that note?
10              THE DEFENDANT:  Yes.
11              THE COURT:  The government has agreed that if I
12   sentence you within the guideline range or higher that they
13   won't appeal.
14              Do you understand that?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Mr. Ceresney and Mr. Nichols have reserved
17   the right to ask me to sentence you to less than the guidelines
18   and they're both going to do that, I know that.  Every lawyer
19   that ever appears before me asks for a sentence lower than the
20   guidelines and they're going to do it.  Mr. Ceresney is a very
21   good lawyer, I have known him for years, so he is going to ask
22   for a sentence lower than the guidelines.
23              Do you understand that?
24              THE DEFENDANT:  Yes.
25              THE COURT:  Now, do you understand that you are not
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                   15
     CCi5harP                  plea
 1   going to bring a habeas corpus application or in any way appeal
 2   the conviction or attack the conviction because the government
 3   has withheld any evidence from you whether it is exculpatory or
 4   what is called impeaching.
 5              Do you understand that?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  And in the agreement here on page 6, why
 8   don't you turn over to page 6, the last paragraph the first
 9   sentence on page 6 reads:  The defendant hereby acknowledges
10   that he has accepted this agreement and decided to plead guilty
11   because he is in fact guilty.
12              Do you understand that?
13              THE DEFENDANT:  Yes.
                                 Page 7
```

```
                         CCi5harP.txt
14              THE COURT:  You are saying you're guilty; are you?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Now, the reason that your guideline range
17   on Count One is as high as it is is because of your criminal
18   history category which is called IV.  The government tells me
19   that you have 14 different convictions for various things, most
20   of them are very minor but, nevertheless, you do have these 14
21   convictions.
22              Do you understand that?
23              THE DEFENDANT:  Yes.
24              THE COURT:  And are you an American citizen?
25              THE DEFENDANT:  Yes, I am.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                     16
     CCi5harP                    plea
 1              THE COURT:  Well, if you weren't a citizen, if you
 2   were not a citizen you would be deported and you have agreed
 3   that you have discussed the possible immigration consequences
 4   including deportation with your lawyers.
 5              Do you understand that?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Did they tell you and do you know -- I
 8   will tell you if they didn't but they should have told and you
 9   and I'm sure they did, that if you are not an American citizen
10   you are going to be deported.
11              Do you understand that?
12              THE DEFENDANT:  Yes.
13              THE COURT:  Now, it is likely -- I wasn't there but it
14   is likely because it happens in nearly every case, that your
15   lawyers and the government lawyer talk to each other about you
16   and your case and that those conversations resulted in this
17   letter agreement.
18              Do you understand that?
19              THE DEFENDANT:  Yes.
20              THE COURT:  Have any promises been made to you to get
21   you to sign the agreement?
22              THE DEFENDANT:  No.
23              THE COURT:  Okay.  And so the agreement is fine with
24   me as to its form, as I said.
25              Now, have you been induced to offer to plead guilty by
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                     17
     CCi5harP                    plea
 1   reason of any promise or statement by anybody to the effect
 2   that you would get leniency or special treatment because you
 3   were pleading guilty instead of going to trial?
 4              THE DEFENDANT:  No.
 5              THE COURT:  Have you been induced to offer to plead
 6   guilty by any fear or pressure or threat or force or anything
 7   like that?
 8              THE DEFENDANT:  No.
 9              THE COURT:  Are you offering to plead guilty of your
10   own free will?
11              THE DEFENDANT:  Yes.
12              THE COURT:  Is there anything you want to ask me about
13   the charges in the case or the consequences of pleading guilty?
14              THE DEFENDANT:  No.
15              THE COURT:  Are you offering to plead guilty because
16   it truth and in fact you are guilty?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Does the government represent that it has
                                Page 8
```

```
19    sufficient evidence to establish a prima facie case,
20    Mr. Diskant?
21             MR. DISKANT:  Yes, your Honor.  We do.
22             THE COURT:  Mr. Ceresney, do you know of any valid
23    legal defense that would likely prevail if your client went to
24    trial?
25             MR. CERESNEY:  No, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

                                                                    18
```
 1             THE COURT:  Now, in order for me to accept your plea
 2    you have to tell me what it is that you did wrong.  What did
 3    you do wrong?  Now take your time and read this to me nice and
 4    slowly.
 5             THE DEFENDANT:  On November 9th, 2010, in Manhattan,
 6    New York, I submit an application for a United States passport.
 7    In the application I stated that my name is Anthony Ray Hardy,
 8    that my birth date is December 17, 1958 and that my social
 9    security number ends in 5517.  I received that identity when I
10    was a child from a man I knew as my uncle.  Based on how I
11    received the identity I knew that it belongs to another person.
12             THE COURT:  What belonged to another person?
13             THE DEFENDANT:  The birth certificate and the social
14    security.
15             THE COURT:  So you were using your uncle's social
16    security number, is that right?
17             THE DEFENDANT:  No.
18             MR. CERESNEY:  No.
19             THE DEFENDANT:  No.
20             THE COURT:  What were you doing?  Whose social
21    security number did you use?
22             THE DEFENDANT:  My uncle gave it to me and say it was
23    mine.
24             THE COURT:  I see.  Go ahead.
25             THE DEFENDANT:  For the same reason I knew that my
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

                                                                    19
```
 1    statement in the passport application using that identity was
 2    false.  I still made those statements to secure a U.S. passport
 3    for my use.
 4             I apologize to my family and to the Court.
 5             THE COURT:  Now, what is your uncle's name?
 6             THE DEFENDANT:  His name is Sidney.
 7             THE COURT:  What did you say?
 8             THE DEFENDANT:  Sidney.  We call him Sidney.
 9             THE COURT:  His name is Sidney?
10             THE DEFENDANT:  Yeah.
11             THE COURT:  And what name did you use in that line for
12    the passport?
13             THE DEFENDANT:  Anthony Hardy.
14             THE COURT:  What did that have to do with your uncle?
15             THE DEFENDANT:  He was one that raised me up.
16             THE COURT:  Say that again?
17             THE DEFENDANT:  He was the one that grow me up.
18             THE COURT:  And did you know what you were doing was
19    wrong?
20             THE DEFENDANT:  Yes.
21             THE COURT:  Is that adequate for the government's
22    purposes?  Because if it is not you ask him anything you want,
23    Mr. Diskant.  You ask him.
```

```
24              MR. DISKANT:  Just to clarify, I believe what the
25   defendant is trying it to say is that his uncle gave him the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                      20
```
     CCi5harP                 plea
 1   identity, the name, the social security number.
 2              THE COURT:  Did you hear what he said?
 3              THE DEFENDANT:  Yes.
 4              MR. DISKANT:  And he knew that those belonged --
 5              THE COURT:  Just tell him.
 6              MR. DISKANT:  And you knew that those belonged to
 7   another person?
 8              THE DEFENDANT:  Yes.
 9              MR. DISKANT:  The government is satisfied.
10              THE COURT:  Is your real name Anthony Hardy?
11              THE DEFENDANT:  Yes.
12              THE COURT:  Where did you get the name Anthony Ray
13   hardy from?
14              (Defendant and counsel conferring)
15              THE DEFENDANT:  My uncle when I was growing up in the
16   U.S. Virgin Islands, St. Thomas.
17              THE COURT:  Before your uncle gave you the name
18   Anthony Ray Hardy, what was your name?
19              THE DEFENDANT:  Anthony.  They always called me
20   Anthony as I'm told.  They called me Anthony, Tony.
21              THE COURT:  This is all right for the government's
22   purposes?
23              MR. DISKANT:  Consistent with the defendant's
24   admission that he knew that the social security number and name
25   that he used belonged to another individual it is sufficient.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                      21
```
     CCi5harP                 plea
 1              THE COURT:  You knew the social security number was
 2   false, is that right?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Is the plea adequate for your purposes,
 5   Mr. Ceresney?
 6              MR. CERESNEY:  Yes, it is, your Honor.
 7              THE COURT:  All right.  I will take the plea.  The
 8   plea will be entered upon the minutes of the Court.  We will
 9   set sentence down for March 19, at 11:00 a.m.  The probation
10   department is to prepare a presentence report addressing
11   Mr. Diskant.  If you would, please prepare the prosecution case
12   summary for purposes of the presentence report and have it
13   delivered to probation no later than 14 days from today and,
14   Mr. Ceresney, make yourself available to be interviewed by
15   probation with Mr. Hardy no later than -- well, with the
16   holidays in here the two week thing may not be so good.  Both
17   of you get to probation, the government and the defense, by
18   January -- by the close of business January 4th, the
19   prosecution case summary; and, Mr. Ceresney, make yourself
20   available by January 4th to be with him at probation.
21              MR. CERESNEY:  Okay.
22              THE COURT:  All right.  Thank you.
23              MR. DISKANT:  Thank you, your Honor.
24              THE COURT:  Oh, and are you satisfied, Mr. Hardy, with
25   the representation Mr. Ceresney gave you?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                      22

CCi5harP.txt
CCi5harP                          plea
1            THE DEFENDANT:  Yes.
2            THE COURT:  All right.  Thank you.
3                              o0o
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

Page 11